IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| SEITU SULAYMAN KOKAYI, ) | 1:18-cr-410 (LMB) |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

After a two-day bench trial, the Court found the defendant Seitu Sulayman Kokayi guilty as to Counts 1 and 3 of the Indictment and took Count 2 under advisement. This memorandum provides additional findings to support the convictions announced in court as well as the findings supporting defendant's conviction for the offense charged in Count 2.

## I. BACKGROUND

### A. The Charge

On November 8, 2018, a federal grand jury returned a three-count indictment charging Kokayi in Counts 1 and 2 with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and in Count 3 with transferring obscene materials to a minor, in violation of 18 U.S.C. § 1470. See Dkt. No. 29. Specifically, the indictment charged that from August 2, 2018 and continuing through August 22, 2018, Kokayi used a facility or means of interstate commerce to knowingly persuade, induce, entice, or coerce a 15-year-old girl to engage in sexual activity for which any person can be charged with a "criminal offense" in violation of 18 U.S.C. § 2422(b). In Count 1, the underlying criminal offense was "to produce child pornography" in violation of 18 U.S.C. § 2251, Virginia Code § 18.2-374.1, and Minnesota Statues § 617.246, and in Count 2, it was "to engage in sexual relations, sexual contact and sexual acts with Kokayi, a twenty-nine-year-old man" in violation of Virginia Code § 18.2-371, D.C. Code § 22-3008,

and Maryland Criminal Code § 3-307(a)(4) and (5).¹ Count 3 alleged that during the same period, Kokayi knowingly used a facility or means of interstate commerce to knowingly transfer and attempt to transfer obscene matter, specifically a live video depiction of his penis and him masturbating, to another individual who had not obtained the age of 16 years, knowing that said other individual had not attained the age of 16 years, in violation of 18 U.S.C. § 1470.

**B. The Evidence**

Very few facts were contested during the trial, in part because most of the evidence consisted of recordings of Kokayi and the victim's phone calls, Instagram messages, and the videotaped interviews of Kokayi and the victim. This evidence clearly established the following facts.²

In the relevant period, Kokayi was a 29-year-old man living in Alexandria, Virginia with his wife and infant daughter. From 2009 until his arrest on August 23, 2018, he was a content developer at the University of Maryland University College, as well as a Quran teacher at a mosque in Washington, D.C. It was in the context of Quran lessons that Kokayi first met Fatiya, the 15-year old victim who had immigrated to the United States in 2012. She joined Kokayi's Quran class shortly after her arrival in the United States, switched to a different Quran instructor for a time, but returned to Kokayi's class when she was 14 years old.

Kokayi grew close with Fatiya's family and was trusted by Fatiya's father to drive her and her older sister to and from their Saturday Quran class. At some point, the student/teacher

---

¹ If more than one unlawful sexual act is charged, the fact-finder need only find that the defendant sought to persuade the minor to engage in just one of those unlawful sexual acts. See United States v. Jockisch, 857 F.3d 1122, 1126–33 (11th Cir. 2017); United States v. Hart, 635 F.3d 850, 854–57 (6th Cir. 2011). Here, the Court found that Kokayi sought to violate the federal pornography statute, 18 U.S.C. § 2251, and Virginia Code § 18.2-371.

² References in the form "GX__" are to the government's exhibits; those in the form of "DX__" are to the defendant's.

relationship between Fatiya and Kokayi changed. On August 4, 2018, Fatiya and her sister traveled to Minnesota to visit family and Kokayi was asked by her father to drive the two girls to the Baltimore airport. Between Fatiya's departure to Minnesota on August 4 and Kokayi's arrest on August 23, Fatiya and Kokayi called each other 256 times and talked for over 32 hours. The two also spoke over FaceTime, a video chat application available on most iPhones, at least 43 times. Audio recordings and transcripts of these phone calls admitted into evidence revealed graphic sexual conversations and activities between the defendant and the victim. Fatiya was 15 years old at the time.

On August 9, Kokayi and Fatiya first spoke about how "things changed" between them and how their relationship had evolved beyond that of a teacher and student, with Kokayi wondering, "Who knows, like, maybe you'll touch me or something like that, and then, I don't know, I'm just throwing it out there, right? And like, that's gonna like, escalate, and right?" GX29. And escalate it did. Kokayi asked if Fatiya had thought about "[s]cenarios or situations where things could happen," "things" like kissing. Id. In a call the following night, Fatiya blamed Kokayi for the inappropriate turn their relationship had taken: "This is your fault, I was innocent." GX32.

On August 11, the two played a game in which they listed the three things they would do to the other if they were together. GX33. Fatiya said first they would kiss, then cuddle, but she was hesitant to say the third thing. Kokayi repeatedly asked her what the third thing would be until she finally answered by spelling out "S…E…." Id. She never added "X" because Kokayi immediately asked, "So, how are we going to make this happen?" and then asked whether she was "wet right now." Id. When she said that she was, he asked if they could FaceTime. Id. Later that night, when the two were speaking on the phone again, Kokayi said that he wanted to give

Fatiya "an orgasm first" before starting her "lessons." GX34. The two then FaceTimed. Id. The following afternoon, Kokayi asked Fatiya whether she "actually [had] an orgasm, too?" GX38. When she said yes, he told her that he was "still really upset" because she had "put [him] on mute" while she orgasmed. Id. On August 19, the two discussed showering together, both in person and over the phone, GX52, and then proceeded to FaceTime while they both took showers, GX53. They also discussed how they should act when Fatiya returned home. Fatiya's father had asked Kokayi to pick her and her sister up from the Baltimore airport on August 23. Kokayi wondered if she would sit on his lap in the car, to which Fatiya responded, "Have you seen that thing?", which, given the context, the Court concludes was a reference to the defendant's penis. GX51.

These phone conversations were intercepted during authorized FISA surveillance. Dkt. No. 33. To prevent Kokayi from meeting Fatiya at the airport, the FBI intervened and executed a search and arrest warrant on his home on August 23, 2018. He waived his Miranda rights and engaged in a voluntary interview with FBI agents shortly after his arrest. The video of this interview was admitted at trial. GX56. During this interview, Kokayi admitted to showering and masturbating simultaneously with Fatiya over FaceTime. The only two relevant factual issues Kokayi denied were that he intended to have sexual relations with Fatiya when she returned and that he knew she was under 16 years of age.

That same day, the FBI met Fatiya at her relative's house in Minnesota. Fatiya was interviewed by FBI Child and Adolescent Forensic Interviewer Bonnie Fries, and the interview was videotaped and admitted into evidence at trial. GX67. In that interview, Fatiya stated that Kokayi knew she was 15 years old because, in addition to having documents which state her date of birth, she had told him that she would not be attending Quran class on her fifteenth birthday.

4

She also described how she and Kokayi would talk over the phone and on FaceTime and how he would describe the sexual acts he wanted to do with her. For example, he told Fatiya how to move her clothing to expose her breasts and to "flash" her breasts at him over FaceTime. Id. He also instructed her to masturbate for him. She claimed that she pretended to masturbate by touching herself under her pants to show him over FaceTime. Fatiya also stated that she saw Kokayi's penis multiple times and that he was "doing stuff physically with his hands with his penis during these FaceTime sessions." DX1. She also said that she would often look away, but he would demand she look at the phone, and he told her they could get a hotel room to have sex once she returned to the D.C. area. GX67.

## II. ANALYSIS

### A. Counts 1 and 2: § 2422(b)

Section 2422(b) makes it a crime to use "any facility or means of interstate or foreign commerce," to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[] to do so." To prove Counts 1 and 2, the government must prove beyond a reasonable doubt that the defendant (1) used a facility of interstate commerce; (2) to knowingly, persuade, induce, entice, or coerce; (3) a person who is younger than 18; (4) to engage in any illegal sexual activity. See United States v. Engle, 676 F.3d 405, 411–12 (4th Cir. 2012). For Count 1, the alleged illegal act was the production of child pornography, and for Count 2, the alleged illegal act was engaging in sexual relations, sexual conduct, and sexual acts with the defendant upon the minor's return to the D.C. area, in violation of a Virginia law which prohibits sexual contact between adults and minors. See Dkt. No. 29.

There is no dispute that the evidence established the first and third elements beyond a reasonable doubt. The first element requires that the defendant knowingly used a "facility or

5

means of interstate ... commerce." 18 U.S.C. § 2422(b). The evidence unequivocally established that while in Virginia, Kokayi communicated with Fatiya while she was in Minnesota by telephone and FaceTime, an internet-based application. This constitutes knowing use of a facility of interstate commerce. See Jeffries v. United States, No. 4:15cr83, 2018 WL 4903267, at *4 (E.D. Va. Oct. 9, 2018) ("Every court to address the issue agrees with the unremarkable proposition that the Internet is a means of interstate commerce.") (internal quotation marks and citations omitted) (collecting cases); United States v. Kaye, 451 F. Supp. 2d 775, 782 (E.D. Va. 2006), aff'd, 243 F. App'x 763 (4th Cir. 2007) ("A transmission of communication by means of the telephone or Internet constitutes the use of a facility of interstate commerce."). The evidence also established the third element, that the victim be under 18 years of age, beyond a reasonable doubt. See § 2422(b). Fatiya admitted that she was 15 years old, and documentary evidence including certified copies of her birth certificate and passport, as well as testimony from her father, clearly established her age. GX65–67. There is no requirement under § 2422(b) that the defendant knew the victim was under 18, see United States v. Banker, 876 F.3d 530, 536–40 (4th Cir. 2017), although, as discussed below, the Court finds that the evidence proved Kokayi knew Fatiya was under the age of 16.

As for the second element, the terms "persuade," "induce," "entice," and "coerce" are to be given their "ordinary meaning." United States v. Clark, 842 F.3d 288, 296 (4th Cir. 2016) (quoting Engle, 676 F.3d at 411 n.3). In ordinary usage, these terms are "effectively synonymous," conveying the idea "of one person leading or moving another by persuasion or influence, as to some action or state of mind." Id. (internal quotation marks and citation omitted).

This element is complete when a defendant successfully "achieves a mental state—a minor's assent" to engage in illegal sexual activity, "regardless of the accused's intentions

concerning the actual consummation of sexual activities with the minor." Engle, 676 F.3d at 419 (internal quotation marks and citation omitted); see also United States v. Brand, 467 F.3d 179, 202 (2d Cir. 2006) ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."). "The crime is complete when the defendant both intends to persuade the minor child to assent to sexual activity and the defendant takes a substantial step toward completing the crime." United States v. Roman, 795 F.3d 511, 517 (6th Cir. 2015). "[T]he very nature of the underlying offense—persuading, inducing or enticing engagement in unlawful sexual activity—necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." Engle, 676 F.3d at 423 (internal quotation marks and citation omitted). The "prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having discussions with [minors] about meeting to have sex is a substantial step towards persuading them to have sex." United States v. Broussard, 669 F.3d 537, 550 (5th Cir. 2012) (citation omitted).

The evidence clearly established that Kokayi succeeded in persuading, inducing, enticing, and coercing Fatiya to engage in the unlawful activity of producing child pornography. There was overwhelming evidence that Kokayi persuaded Fatiya to send him images over FaceTime of her naked breasts, of herself masturbating, and of her naked body while she was in the shower. Fatiya described how Kokayi told her "step by step" how to take off her shirt to expose her breasts and told her to finger herself, instructing her to "put [her] finger there put use [sic] two fingers do that, put it there." GX67. Kokayi scolded Fatiya for putting him "on mute" while she was ostensibly having an orgasm, telling her that he was "still really upset with [her]" for silencing her phone, as apparently watching her orgasm was not sufficient. GX38. He repeatedly

asked her to shower with him over FaceTime, and he admits to seeing her naked body over FaceTime during the shower session. GX56.

Section 2251(a) authorizes the punishment of any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." 18 U.S.C. § 2251(a). "Sexually explicit conduct" includes "actual or simulated ... masturbation." Id. § 2256(2)(A). Persuading Fatiya to engage in actual or simulated masturbation, as well to expose her naked breasts and nude body while showering, over telephone and FaceTime satisfies the illegal sexual activity element of Count 1.

In Count 2, the defendant is charged with persuading, inducing, enticing, and coercing the minor to engage in sexual relations, conduct, and acts with the defendant upon her return to the D.C. area. The government argued, and the evidence established, that the sheer volume of phone calls and FaceTime conversations between the defendant and Fatiya established that he was attempting to seduce her. The two had more than 250 conversations in a one-month period and spoke for over 32 hours. The defendant argued that only a small portion of these conversations were sexual; however, even those seemingly innocuous conversations played a role in the sexual grooming of the minor.

As the Fourth Circuit has recognized, § 2422(b) "targets the sexual grooming of minors as well as the actual sexual exploitation of them." Engle, 676 F.3d at 412 (quoting United States v. Berg, 640 F.3d 239, 252 (7th Cir. 2011)). "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." Id. (internal quotation marks and citation omitted). This is

8

exactly what happened here. When Kokayi told Fatiya about his troubled relationship with his father and that "[n]ot too many people know like, unless they're like super close, like friends or like family," he was developing a special relationship with her to break down any inhibitions Fatiya may have had towards engaging in sexual activity with him. GX40.

In his closing argument, defense counsel argued that this case is not a 'typical' sexual grooming case because 'typical' sexual grooming cases involve the random and anonymous selection of a minor victim, often online. Defense counsel also questioned the definition of "sexual grooming" used in Engle, 676 F.3d at 412, by pointing out that it was derived from Wikipedia, see Doe v. Liberatore, 478 F. Supp. 2d 742, 750 (M.D. Pa. 2007). Counsel ignores how much the concept of "sexual grooming" has developed and gained recognition over the past years as an appropriate legal concept, and Engle's definition of sexual grooming has been relied upon by numerous circuits. See United States v. Isabella, 918 F.3d 816, 833 (10th Cir. 2019); United States v. Hite, 769 F.3d 1154, 1165–66 (D.C. Cir. 2014); United States v. Chambers, 642 F.3d 588, 593 (7th Cir. 2011); United States v. Goetzke, 494 F.3d 1231, 1235–36 (9th Cir. 2007); Brand, 467 F.3d at 203.

Furthermore, the teacher/student relationship is a classic example of a relationship in which sexual grooming can occur. In 2004, the United States Department of Education raised the alarm about sexual grooming in schools, describing how its purposes were "to test the child's ability to maintain secrecy" and "to desensitize the child through progressive sexual behaviors." Educator Sexual Misconduct: A Synthesis of Existing Literature, U.S. Dep't of Educ. 32 (2004), http://www.wrightslaw.com/pubs/sex.misconduct.doe.2004.pdf (last visited May 7, 2019). In telling Fatiya about his troubled past and letting her know that she is one of the few people to know such intimate details about his life, Kokayi was engaging in classic sexual grooming

9

behavior by testing Fatiya's ability to maintain secrecy and developing secure intimate bonds with her.

On numerous occasions, Kokayi was explicit about persuading Fatiya to consent to sexual activity. As the prosecution argued during closing argument, during the "three things" conversation, after Fatiya began to spell out "sex" as the third thing she would like to do with Kokayi, he asked, "So how are we going to make this happen?" and "are you being serious?" GX33. Fatiya responded that she was serious, indicating her assent to sexual activity. Kokayi repeatedly suggested that he would travel to see her and even discussed getting a hotel room so the two could have sex. Fatiya told Special Agent Fries that Kokayi told her he would like to "kiss [her] boobs," "eat [her] out," and "play with [her]," meaning "play with [her] vagina." GX67. The simultaneous shower over FaceTime was done at Kokayi's behest, DX1, and when Fatiya rejected one of his earlier attempts to shower together he said, "If I ever ask you that and you were here, you better say yes… We have an agreement?" GX53. Kokayi was planning to pick Fatiya up from the airport and had asked how he should act when he sees her, specifically whether they should touch and whether she would sit on his lap. On more than one occasion, the two had discussions about explicit sexual acts they would like to perform together.

The hundreds of phone calls and FaceTime sessions between the defendant and the minor and the substance of their conversations, both benign and sexual, constitute a substantial step towards getting the minor to assent to sexual activity. See Goetzke, 494 F.3d at 1237 ("[W]hen a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward [enticing] a minor to engage in unlawful sexual activity.") (citation omitted).

10

Accordingly, the evidence fully supports the finding that the defendant knowingly persuaded the minor to assent to engage in sexual activity.

The last element of § 2422(b) requires that the sexual activity the defendant is persuading the minor to engage in would be illegal if the activity occurred. Section 2422(b) does not require that the sexual conduct itself occur, see Engle, 565 F.3d at 412, nor do the elements of the underlying criminal offenses become elements of § 2422(b), see Roman, 795 F.3d at 515 n.2. The phrase "sexual activity" describes conduct connected with "the active pursuit of libidinal gratification" and does not require "interpersonal physical contact." United States v. Fugit, 703 F.3d 248, 255 (4th Cir. 2012) (internal quotation marks and citation omitted).

Because the obvious place where the proposed sexual conduct would have occurred is in the defendant's home in Virginia, the Court shall examine § 18.2-371 of the Virginia Code, which criminalizes "any person 18 years of age or older ... who ... engages in consensual sexual intercourse or anal intercourse with or performs cunnilingus, fellatio, or anilingus upon or by a child 15 or older" as a Class 1 misdemeanor. There can be no doubt that the defendant, a 29-year-old man, attempted to persuade a minor, a 15-year-old girl, to engage in sexual intercourse in violation of this section of the Virginia Code. What gives the Court pause is that Virginia Code § 18.2-371 is merely a misdemeanor offense, yet United States Code § 2422(b) is a felony offense which carries a ten-year mandatory minimum sentence.

Section 2422(b) criminalizes persuading a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." In United States v. Shill, 740 F.3d 1347 (9th Cir. 2014), the Ninth Circuit dealt directly with the issue of whether § 2422(b) encompasses state misdemeanors and held that it does: "§ 2422(b) clearly and unambiguously criminalizes attempted sexual activity where the object of the attempt would amount to either a

misdemeanor or a felony under state law." Id. at 1354. The underlying sexual activities charged in Shill was sexual abuse in the third degree and contributing to the sexual delinquency of a minor in violation of Oregon Revised Statute §§ 163.415 and 163.435, respectively; both crimes are Class A misdemeanors under Oregon law. Id. at 1350. The Ninth Circuit's analysis "begins and ends" with the ordinary meaning of § 2422(b), which includes both misdemeanors and felonies. Id. at 1351. The "plain meaning" of "criminal offense" is "generally understood to encompass both misdemeanors and felonies." Id.; see also Black's Law Dictionary (9th ed. 2009) (defining "criminal offense" as "a violation of the law; a crime, often a minor one."). Furthermore, Congress's "repeated use" of the word "any" "suggests that Congress intended the statute's reach to be broad." Shill, 740 F.3d at 1352 (internal quotation marks and citation omitted). Congress clearly meant "to address the very real and dangerous problem of online enticement of minors," id. at 1354, and if it had meant to exclude misdemeanors, it could have done so.

In Shill, the Ninth Circuit also held that the ten-year mandatory minimum sentence required under § 2422(b) does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Id. at 1355–57. The Fourth Circuit, in United States v. Brown, 681 F. App'x 268 (4th Cir.), cert. denied, 138 S. Ct. 152 (2017), applied Shill's reasoning to uphold a ten-year sentence for a defendant convicted under § 2422(b) where the underlying state statutes, although felonies, did not expose the defendant to a ten-year mandatory minimum sentence.[3]

---

[3] The underlying criminal offenses charged in Brown—Va. Code §§ 18.2-63 and 18.2-370—exposed the defendant to terms of imprisonment not less than two years nor more than ten years and not less than one year nor more than ten years, respectively. Id. § 18.2-10; United States v. Brown, No. 1:15cr342 (E.D. Va. Dec. 1, 2015), ECF No. 18. Other circuits have also held that the ten-year mandatory minimum sentence required under §2422(b) does not violate the Eighth Amendment. See United States v. Hughes, 632 F.3d 956, 959–60 (6th Cir. 2011); United States

Both the Eastern District of Virginia and the Fourth Circuit rejected the defendant's argument that a ten-year sentence was "grossly disproportionate" because he "never came into contact with any minors" and "no minors were ever at risk of harm during the commission of this crime," as he only spoke to an undercover officer posing as a minor, finding his argument "irrelevant." United States v. Brown, No. 1:15cr342, 2016 WL 3552218, at *2 (E.D. Va. June 23, 2016). Moreover, the only time the Supreme Court has identified a term-of-years sentence as grossly disproportionate was when a defendant was sentenced to life without the possibility of parole for passing a bad check for one hundred dollars. See Solem v. Helm, 463 U.S. 277 (1983). Having considered these authorities, the text of the statute, and what appears to be the clear intent of Congress in choosing such expansive language, i.e. "any" and "offense," the Court is satisfied that the defendant did persuade a minor to assent to sexual activity that, if committed, would constitute a criminal offense, and that even though the sexual activity is a misdemeanor under state law, conviction of the federal offense does not violate any Eighth Amendment rights of the defendant. For these reasons, the Court finds Kokayi guilty of the charge in Count 2.

## B. Count 3: § 1470

Section 1470 makes it a crime to use interstate commerce to "knowingly transfer[] obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so." The obscene matter this defendant is charged with transferring is "a live video depiction of his penis and him masturbating." Dkt. No. 29. To prove Count 3, the government must prove beyond a reasonable doubt that (1) the defendant used a facility or means of interstate or foreign commerce; (2) to knowingly transfer or attempt to transfer the material as charged to the specified minor; (3) the

---

v. Nagel, 559 F.3d 756, 762–65 (7th Cir. 2009); United States v. Butters, 267 F. App'x 773, 778 (10th Cir. 2008).

defendant knew at the time the general contents, character and nature of the material; (4) the material was obscene; and (5) at the time, the recipient was not yet 16 years old and the defendant knew that she was not yet 16 years old. See United States v. Schofield, 802 F.3d 722, 726–30 (5th Cir. 2015), cert. denied, 136 S. Ct. 1212 (2016).

The interstate commerce requirement is satisfied because, as discussed above, the defendant transmitted a live video image over FaceTime, an internet-based application, from his home in Virginia to the minor in Minnesota. It has also been sufficiently established that the minor was 15 years old at the time, and thus "ha[d] not attained the age of 16 years." 18 U.S.C. § 1470.

During closing argument, defense counsel argued that because the video was sent live over FaceTime, the image was never stored on the minor's phone and thus was never "transferred." The word "transfer" simply means to "to convey from one person, place, or situation to another, to cause to pass from one to another." Transfer, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/transfer (last visited May 7, 2019). The Fifth Circuit upheld a conviction under § 1470 when images of the defendant's penis were sent to the minor over Skype, an internet-based video application similar to FaceTime. See United States v. Hughes, 618 F. App'x 770, 772 (5th Cir. 2015). The live images at issue in Count 3 were sent over FaceTime and therefore were transferred from Virginia to a 15-year-old in Minnesota. That conduct is all that is needed to constitute a transfer; whether those images were stored is irrelevant. Therefore, that element is established.

Although the images were not available as evidence, Fatiya's statements and the defendant's admissions that he sent live videos of his erect penis and of himself masturbating to Fatiya is more than enough evidence to find that the defendant knowingly transferred images he

knew to be obscene. Fatiya admitted seeing the defendant's penis "on more than one occasion while they were in FaceTime communications with each other" and "that he was doing stuff physically with his hands with his penis during these FaceTime sessions." DX1. Section 1470 does not require the minor to view the obscene material, only that the defendant knowingly sent obscene material. Even while maintaining that she did not view the images, Fatiya knew they were being sent because Kokayi would repeatedly tell her to "look at the phone," as well as ask "do you see how big it is?" GX67. He sent a live video not only of his erect penis but of himself masturbating, evidenced by questions like "did you see me cum?" and "so how was that show?" Id. When Fatiya said that she did not see anything, he replied, "so I did all that work and you didn't see it?" Id. These comments prove that Kokayi knew the content of the images he was transferring and establish beyond a reasonable doubt that he transferred to a minor live video of himself masturbating.

The standard test for obscenity derives from the Supreme Court's decision in Miller v. California, 413 U.S. 15 (1973), in which the Court held that material is "obscene" when:

> (1) the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to the prurient interest;
> (2) the average person, applying contemporary community standards, would find that the material depicts or describes ultimate sexual acts, excretory functions, masturbation or lewd exhibition of the genitals in a patently offensive way; and
> (3) a reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political or scientific value.

Id. at 24–25. Several circuits have held that a video of an adult male's erect penis or masturbating penis constitutes "obscene material" under § 1470. See, e.g., United States v. Guthrie, 720 F. App'x 199, 201–03 (5th Cir.), cert. denied, 138 S. Ct. 2590 (2018); United States v. Kirkpatrick, 662 F. App'x 237, 240 (5th Cir. 2016); United States v. Rogers, 474 F. App'x 463, 470 (7th Cir.), cert. denied, 568 U.S. 916 (2012); United States v. Jenkins, 322 F. App'x

716, 716–17 (11th Cir. 2009). This evidence and authority supports the conclusion that the fourth element has been satisfied.

As to the fifth and final element, although Kokayi claimed he did not know Fatiya's age, the evidence established beyond a reasonable doubt that he knew she was less than 16 years old. When asked if Kokayi knew how old she was, Fatiya stated unequivocally, "He knows I'm 15." GX67. She said he knew her age because he knows her birthday from having registration papers for Quran class which list her date of birth and because she had told him on her most recent birthday in June 2018 that she was turning 15 and would be missing Quran class to celebrate. Id. On her birthday, Kokayi sent Fatiya three happy birthday Bitmojis on Instagram. GX6–8. In addition, Fatiya had sent Kokayi a copy of her permanent resident card so that he could help her with a visa application. GX12, 16. Seconds after receiving the permanent resident card, Kokayi searched "where is the number on a permanent resident card" on Google. GX78. This Google search proves that Kokayi was examining the permanent resident card closely. That permanent resident card included Fatiya's date of birth. GX16. Other evidence clearly put Kokayi on notice of Fatiya's young age. For example, he knew that she was about to start high school, and when Fatiya said that she could not study abroad because she was not yet in high school, he responded "you literally have to wait until summers over." GX22. Later in that same conversation, Kokayi asked Fatiya where she sees herself in five years and she replied, "out of high school and fresh into college." Id. During another conversation, Kokayi said that four years from now, Fatiya would "most likely be in college," and Fatiya clarified that she would be in her "first year." GX44. Most students are less than 16 years old when they begin high school. Accordingly, the government adduced more than enough direct and indirect evidence at trial to prove that Kokayi knew that Fatiya was less than 16 years.

At a minimum, Kokayi was willfully blind to the fact that Fatiya was less than 16 years old. Had this been a jury trial, a willful blindness instruction would have been appropriate because the defendant claimed "lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance." United Stated v. George, 347 F. App'x 941, 943 (4th Cir. 2009) (citation omitted). In George, the Fourth Circuit found that because the minor told the defendant her age "several times" and "made references to age-appropriate life circumstances during the chat conversations" a willful blindness instruction was appropriate. Id. Here, Fatiya told Kokayi her age, he had access to documents listing her date of birth, and many of their conversations referred to the fact that she would be starting high school in the fall. Accordingly, the Court finds that the defendant knew that Fatiya was less than 16 years old. Because the evidence established all elements of Count 3 beyond a reasonable doubt, the defendant is guilty of this offense as well.

### III. CONCLUSION

For the reasons stated above, the Court reaffirms its conclusion that the defendant is guilty of Counts 1 and 3 and also concludes that he is guilty of Count 2.

Entered this 8th day of May, 2019.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

17